UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IBRAHIM ECHEVARRIA

      Plaintiff,

v.                                                              CASE No. 8:12-CV-1801-T-TGW

CAROLYN W. COLVIN,[1]
Commissioner of Social Security,

      Defendant.

---

ORDER

      The plaintiff in this case seeks judicial review of the denial of his request for reinstatement of his Social Security disability benefits and supplemental security income payments.[2] Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain reversible error, the decision will be affirmed.

---

      [1]On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security and should, therefore, be substituted for Commissioner Michael J. Astrue as defendant in this action. See 42 U.S.C. 405(g); Fed.R.Civ.P. 25(d).

      [2]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 15).

I.

The plaintiff, who was forty-nine years old at the time of the administrative hearing and who has a high school education, has worked as a security guard and pizza deliverer (Tr. 774-76, 793). He previously filed claims for Social Security disability benefits and supplemental security income payments, alleging that he was disabled due to mental health problems (see Tr. 145-47). The plaintiff was awarded benefits as of January 1, 2001, on the ground that his impairment met the severity of Listing 12.03 of Appendix 1 relating to schizophrenia (see Tr. 28, 102, 627-39). Nonetheless, the plaintiff worked for several years thereafter (see Tr. 29-32, 650).[3]

Upon a subsequent continuing disability review, the plaintiff was found no longer disabled as of June 30, 2008, because he had shown medical improvement related to his ability to work (see Tr. 16, 102). The plaintiff sought reinstatement of his benefits, alleging that he was unable to work due to bipolar disorder, depression, anxiety, and mood swings (Tr. 247-54). The

---

[3]The plaintiff reported to Social Security representative Steven Downing in May 2008 that he had been working as a security guard for about four years (Tr. 650). The plaintiff stated that it was a job he enjoyed, but that he had stopped working because he thought that would facilitate reinstatement of his Social Security benefits (id.).

request was denied (Tr. 81-84). That determination was upheld upon reconsideration after a hearing by a disability hearing officer (Tr. 36, 90, 104).

The plaintiff, at his request, then received a de novo hearing before an administrative law judge. The law judge found that, as of June 30, 2008, there had been medical improvement which related to the plaintiff's ability to work (Tr. 19). Specifically, the law judge determined that, while the plaintiff had the severe impairment of bipolar disorder, he no longer met, or medically equaled, a listing (Tr. 18, 19). He found that the plaintiff's mental disorder restricted the plaintiff to medium work involving one- or two-step tasks, and only occasional decisionmaking, changes in a work setting and interaction with the public (Tr. 19). The law judge concluded that these limitations prevented the plaintiff from returning to past work (Tr. 23). However, based upon the testimony of a vocational expert, the law judge found that there are jobs that exist in significant numbers in the national economy that the plaintiff could perform, such as car washer, laundry worker, and dishwasher (Tr. 24). The law judge therefore ruled that the plaintiff was

not disabled (id.).  The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."   42 U.S.C. 423(d)(3), 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305

U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper

legal standards were applied and legal requirements were met.  Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

### III.

The plaintiff's sole argument is that the law judge owed him a heightened duty to develop the record because he was a pro se claimant, and that the law judge failed to fulfill that duty because he did not obtain updated records from his health care provider, Mental Health Care, Inc. ("MHC"), for the period between October 2009 and October 29, 2010, the date of the administrative hearing (Doc. 23, p. 9). Thus, the plaintiff does not specifically challenge any of the law judge's findings.  In light of the scheduling Order (Doc. 14), any such challenges are forfeited.

About six weeks before the administrative hearing, the law judge sent the plaintiff correspondence notifying him of the hearing date and informing the plaintiff of his right to representation by counsel (Tr. 108-09, 113-14).  The plaintiff had previously received written notification of his right to counsel (Tr. 94-94A).  The correspondence further advised the plaintiff that, if there were more recent medical records or reports he wanted

the law judge to consider, the plaintiff must present that evidence to the law judge (id., Tr. 109).

At the hearing on October 29, 2010, the plaintiff appeared without a representative, and the law judge again reminded the plaintiff of his right to counsel.  In this regard, the following exchange between the law judge and the plaintiff occurred (Tr. 772-73):

> ALJ: .... Before we do anything else, I need to discuss with you your right to representation. You have a right to be represented by a attorney or a non-attorney.  They can help you obtain information about your claim, explain medical terms, help protect your rights, and make any requests before me.  A representative might not charge a fee or receive a fee unless Social Security approves it.  Some legal service organizations offer legal representations free of charge if you satisfy the qualifying requirements of those organizations. You also have the right to proceed today without the benefit of a representative.  If you do so, I will obtain the necessary medical and non-medical records, and question the witnesses at the hearing. Do you understand your right to representation?

> CLMT: Yes.

> ALJ: Okay.  Do you wish to proceed today without the benefit of a representative, or would you like time to get a representative?

> CLMT: Without.

The plaintiff, who was thus not represented at the administrative hearing, subsequently obtained counsel to represent him in connection with this action (see Doc. 1, p. 3). As indicated, his counsel argues that the law judge's failure to obtain updated records from MHC constitutes reversible error (Doc. 24). The absence of those records was discussed during the administrative hearing, as follows (Tr. 779):

> Q: Are you seeing a psychiatrist or counselor, now? Are you still going to mental health care?
>
> A: Yes.
>
> Q: Okay. We don't have anything since October of '09. So are there more current records?
>
> A: Yes.
>
> Q: You don't have them with you?
>
> A: No, I didn't bring anything with me.
>
> Q: Well I might request those.

(See also Tr. 796).

Such documents, if there are any, are not part of the record. The most recent treatment note in the record from MHC is dated October 2, 2009.

The law judge has a basic duty to develop a full and fair record, regardless of whether a plaintiff is represented by counsel. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). Additionally, the law judge "has a special duty to ensure the record demonstrates that an unrepresented claimant who did not waive counsel was not prejudiced by the lack of counsel." Robinson v. Astrue, 235 Fed. Appx. 725, 727 (11th Cir. 2007) (emphasis omitted); see also Cowart v. Schweiker, 662 F.2d 731, 735 (5th Cir. 1981). However, "where counsel has been waived, the special duty to develop the record does not take effect." Robinson v. Astrue, supra. In all events, the burden of proving disability rests primarily with the plaintiff. See Ellison v. Barnhart, supra; 20 C.F.R. 404.1512(c), 416.912(c) ("You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled.").

The law judge did not have a special duty to develop the record due to the plaintiff's pro se status because, as stated above, the plaintiff expressly waived his right to representation at the administrative hearing (Tr. 772-73). The waiver, furthermore, is valid and binding. Thus, the plaintiff, who is familiar with the Social Security administrative process, was informed

in writing and orally of his right to counsel, yet he declined that opportunity. Notably, the plaintiff has not argued that his waiver was invalid. Consequently, in light of the valid waiver, the plaintiff's assertion that the law judge had a special duty to develop the record is legally unsubstantiated.

The law judge's basic obligation to develop a full and fair record in this case relates to the "12 months preceding the date [the claimant] sign[s] a report about [his] continuing disability status." 20 C.F.R. 404.1593(b), 416.993(b); see Ellison v. Barnhart, supra, 355 F.3d at 1276. The MHC records at issue, to the extent that they exist, were generated more than one to two years after the plaintiff requested reinstatement of his benefits (Tr. 254). Therefore, the law judge was not obligated to obtain those MHC records as part of his basic duty to develop a full and fair record. See Ellison v. Barnhart, supra.

However, the plaintiff asserts, albeit without any citation of legal authority, that the law judge undertook the obligation to obtain additional MHC records through his comments to the plaintiff at the hearing (Doc. 23, p. 8). The plaintiff complains that the law judge failed to obtain the records

and failed to notify the plaintiff of that failure so that the plaintiff could obtain them himself (id., pp. 8-9).

The plaintiff's accusation that the law judge was neglectful with respect to additional MHC records is unconvincing because there is no evidence to support the plaintiff's statement at the hearing that there are such records. Thus, there has been no showing that additional records even exist.

Notably, the hearing officer stated that the record was held open for the receipt of medical evidence from MHC, which was received on March 9, 2010 (Tr. 99). Those records, however, only related to the period from March 26, 2009, through October 6, 2009 (Tr. 101). In other words, when the MHC records were requested in March 2010, the records only extended to October 6, 2009. Thus, there was a five-month gap at the end of the records, indicating that the plaintiff's treatment at MHC had not continued.

Furthermore, when, on March 23, 2010, the plaintiff sought review by an administrative law judge of the hearing officer's decision, the plaintiff expressly indicated that he had no additional evidence to submit (Tr. 97). That fact was confirmed by a statement sent to the plaintiff on May 11,

2010, summarizing the plaintiff's request for a hearing before a law judge (Tr. 94A).

In addition, the law judge's decision indicated that he only had progress notes from MHC through October 2009 (Tr. 22). Consequently, if the plaintiff thought that there were additional records from MHC that should be considered, he could have submitted them to the Appeals Council along with his request for review. Significantly, the request for review form specifically has a bold heading entitled "ADDITIONAL EVIDENCE" and advises the claimant that, if there is additional evidence, it can be submitted with the request for review (Tr. 12). There is no indication that any additional evidence was submitted.

Even now, when the plaintiff complains that the law judge failed to obtain additional records from MHC, no records have been submitted to the court. Under these circumstances, I have no reason to think that there are additional records.

Moreover, assuming there are such records and the law judge failed to obtain them, that would not justify a remand. Thus, a failure to develop the record does not warrant a remand unless the plaintiff

demonstrates evidentiary gaps in the record which result in "unfairness or clear prejudice," regardless of whether the law judge had a basic or special duty. Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997); see also Edwards v. Sullivan, 937 F.2d 580, 586 (11th Cir. 1991); Robinson v. Astrue, supra, 235 Fed. Appx. at 727; Henderson v. Commissioner of Social Security, 353 Fed. Appx. 303, 305 (11th Cir. 2009). Specifically, the plaintiff must identify "what facts could have been submitted ... that would have changed the outcome." Edwards v. Sullivan, supra, 937 F.2d at 586; see also Henderson v. Commissioner of Social Security, supra (the plaintiff failed to show prejudice because she "does not explain how the absence of ... [that evidence] precluded the ALJ from making an informed disability determination. Nor does she explain how such an assessment would have affected the ALJ's overall disability determination."). Therefore, the absence of updated medical records, in itself, does not demonstrate reversible error. See id.

As the Commissioner argues (Doc. 24, pp. 9-10), the plaintiff has failed to make the required showing. In this regard, the plaintiff argues that "there is a reasonable possibility that updated medical records would contain

complaints by the Plaintiff to support his testimony at the ALJ hearing" (Doc. 23, p. 9). Thus, the plaintiff suggests that those records could possibly bolster his credibility. This contention is unavailing.

First, it is pure speculation that updated MHC records would support the plaintiff's hearing testimony because the contents of those records are unknown. Thus, the plaintiff failed to submit to the court the additional MHC records to show that their absence results in unfairness or clear prejudice to the plaintiff. See Edwards v. Sullivan, supra, 937 F.2d at 586 (to establish prejudice, the plaintiff needs to identify "what facts could have been submitted ... that would have changed the outcome").

Notably, the plaintiff has been represented by experienced Social Security counsel since the inception of this action, and he has received three extensions of time to file his memorandum (see Docs. 20, 21, 22), thereby affording him ample time to obtain those records. That has not been done, nor has an explanation been given for absence of the records. See Ellison v. Barnhart, supra, 355 F.3d at 1276 (the plaintiff is responsible for producing evidence in support of his claim). Consequently, not only has the plaintiff failed to show that additional records exist, but also that they are favorable to

the plaintiff. In all events, speculation about the contents of those records does not justify a remand.

Furthermore, the plaintiff's intimation in his memorandum that his mental condition had worsened at the time of the hearing, and that updated records would substantiate his hearing testimony (see Doc. 23, p. 9), is baseless. Thus, the plaintiff does not identify any testimony of new or worsening mental symptoms that allegedly would be bolstered by additional records. To the contrary, when the law judge questioned the plaintiff at the hearing regarding his then-current mental status, the plaintiff told the law judge that mental health treatment "helps me ... be able to function day per day..."; the plaintiff affirmed that he was not experiencing suicidal thoughts, hearing voices or seeing things; he stated that he works part-time, has friends, and engages in social activities; and he had not been hospitalized for years (Tr. 776, 779-83, 788).

Significantly, the law judge pointed out that Dr. Pavan Pancholy, who was conducting the plaintiff's medication review at MHC, reported the plaintiff was "stable on medications" (Tr. 22). The law judge stated further that the notes from MHC that were obtained said that the plaintiff "reported

relief with medications" and that "his medications were working well" (Tr. 21). The plaintiff has not identified any testimony indicating that his stable condition had worsened. Accordingly, there is no reason to think that additional records from MHC would reflect a change in his mental status.

Moreover, the plaintiff's supposition that the law judge's credibility determination could possibly change if the law judge had updated records containing the plaintiff's subjective complaints to health care providers is flawed. Thus, the plaintiff's reports of adequate mental functioning to his physicians was only one of several reasons given by the law judge for discounting the plaintiff's allegations of disability. The law judge also explained that the plaintiff's testimony of a disabling condition was not fully credible because (1) the plaintiff's mental status evaluation by consultative psychologist Dr. Richard Carpenter was essentially within normal limits; (2) his physicians' progress notes from the pertinent time period did not reveal any significant mental impairments or state any mental functional limitations; (3) two nonexamining reviewing doctors opined that the plaintiff's mental impairments were not disabling; and (4) the plaintiff's statements at the hearing and in Function Reports revealed daily activities that

-16-

are inconsistent with disabling mental impairments (Tr. 18, 21, 22; see Tr. 645-48). Therefore, there is no reasonable basis to conclude that the law judge's decision would have changed if the law judge had updated MHC records that contained "complaints by the Plaintiff" (Doc. 23, p. 9).

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby **AFFIRMED**. The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this ____ day of August, 2013.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE